WOODROW HAMILTON AND CAROL P. HAMILTON, HIS WIFE, PLAINTIFFS, v. NICHOLAS V. LUCA AND ELAINE CAROL LUCA, HIS WIFE, BIRCH APARTMENTS, INC., A NEW JERSEY CORPORATION, JAMES J. VREELAND AND ALEXANDER HAMILTON SAVINGS AND LOAN ASSOCIATION OF PATERSON, NEW JERSEY, A CORPORATION OF NEW JERSEY, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided April 15, 1965.

Mr. *Kevin M. O'Halloran* for plaintiff (*Messrs. Morrison, Lloyd & Griggs,* attorneys).

*Mr. Harvey Blicksilver* for defendants James J. Vreeland and Alexander Hamilton Savings & Loan Ass'n of Paterson, N. J. (*Messrs. Lieblich & Cole*, attorneys).

SCHNEIDER, J. C. C. (temporarily assigned). Defendants Vreeland and Alexander Hamilton Savings and Loan Association move for summary judgment. On March 11, 1963 plaintiffs entered into an agreement with defendants Luca and Birch Apartments, Inc. for the purchase of certain property and house in Upper Saddle River, New Jersey. The plaintiffs paid $3,800 as part of purchase price at time of contract. The contract provided for conveyance on April 1, 1963. The contract was recorded in the Bergen County Clerk's Office on September 26, 1963 in Deed Book 4551, at page 490. It should be noted that this date is long after the time fixed for closing of title.

Plaintiffs contend in their pleadings that defendants failed to complete the building and could not deliver good title at the time specified in the contract. On September 24, 1963 defendants Luca gave notice that time was of the essence, with closing to take place on October 4, 1963. Plaintiffs contend that on that date they were ready to close title but defendants Luca failed to have a mortgage of record cancelled, to remove a mechanic's notice of intention, and in other ways were unable to perform, and the complaint sets forth numerous items of incompleted or improper work. Plaintiffs claim defendants were unable to perform and seek return of the deposit.

On November 29, 1963 the Lucas conveyed the property to defendant James J. Vreeland, and the deed was recorded January 3, 1964 in the Bergen County Clerk's Office in Deed Book 4589, at page 196. James Vreeland is president of Birch Apartments, Inc., and the conveyance to him was with knowledge of the entire background of this case. Plaintiffs seek to impress a vendee's lien upon the property for the amount of the deposit. They sue Alexander Hamilton Savings & Loan, contending that the Lucas executed a mortgage

on November 29, 1963 on said premises to that institution, recorded December 4, 1963 in Mortgage Book 4039, page 471. They contend that their vendee's lien comes ahead of this mortgage.

These latter defendants seek summary judgment and rely upon the statute *R. S.* 46:21–3 as basis for their right to seek judgment. Vreeland in his affidavit contends he bought the property, and assumed the mortgage in question and gave up an interest in other property owned jointly with Luca worth $10,000. He presently resides in the property in question.

Suit was instituted in June 1964.

*R. S.* 46:21–3 provides as follows:

"46:21–3. Recorded agreements for sale or purchase of real estate void as against subsequent judgment creditors, etc., unless sued on within specified times.

Every hereafter recorded agreement for the sale or purchase of real estate situate in this state shall be absolutely void as against subsequent judgment creditors of the vendor and as against subsequent purchasers and mortgagees for value of such real estate, unless the vendee, his heirs, executors, administrators or assigns, shall commence an action for the specific performance of such agreement, or for its rescission, or for the violation of any of the covenants therein contained, and shall file a notice of the pendency of such action in the office of the county recording officer of the county in which the affected real estate is situate, setting forth the title of the cause and the general object thereof, together with a description of the real estate to be affected thereby, (a) within three months after the date fixed in such agreement for its consummation, or (b) if no date shall be fixed in such agreement for its consummation, within three months after the date of such agreement, or (c) if the consummation of such agreement shall be extended by the parties thereto, before the date fixed therein for its consummation, beyond the date so fixed, and such extension shall be duly acknowledged and recorded as agreements for the sale of land are required to be acknowledged and recorded in order to give them the effect of notice to subsequent judgment creditors, purchasers and mortgagees, within three months after the date fixed in such extension for the consummation of such agreement, or (d) upon the death of the vendor or vendors or one or more of them within any such periods of three months, within three months after such death.

If the plaintiff or complainant in any such action does not take steps to prosecute the same within six months after the filing of such notice, the chancellor or court in which such action is commenced may, upon application by any interested party, and upon notice to the

plaintiff or his attorney or the complainant or his solicitor, declare the filing of such notice to be null and void and of no effect, and that the real estate mentioned in such notice shall be and remain discharged of all equities or claims founded on such agreement."

The contract was recorded long after the date set for closing. Defendants contend that the contract is void as against them. Vreeland so contends despite his knowledge of all of the facts in this transaction. It is admitted that plaintiffs never filed the notice under the statute.

Plaintiffs contend that the statute does not apply in this case. They further allege that the attorney closing for the Hamilton Savings and Loan Association was also attorney for defendants Luca and had full knowledge of the facts, and his knowledge as agent would bind the principal.

The peculiar thing about this case is that if plaintiffs had not recorded the contract, Vreeland, having actual notice, would not be able to plead the statute and could be held to knowledge of plaintiff's vendee's lien. The filing of the contract at the late date made compliance impossible under the statute, since the notice could no longer be filed. Plaintiffs contend that the recording was a nullity and therefore could not call the statute into being.

In *Reade v. Leslie,* 137 *N. J. Eq.* 343 *(Ch.* 1945), and *Bramall v. Walton,* 23 *N .J. Super.* 360 *(Ch. Div.* 1953), it was held that actual notice to subsequent purchasers of the existence of a prior agreement was immaterial and the statute controlled.

■ Therefore, notwithstanding the possibility that defendant Alexander Hamilton Savings and Loan Association had actual notice of the prior agreement, plaintiffs' failure to fully comply with the requirement of *R. S.* 46:21–3 nullifies the contention that its vendee's lien should receive priority ahead of the Alexander Hamilton mortgage:

"The statute by its terms provides that the contract shall be absolutely void, unless complied with, against subsequent mortgagees for value. The statute does not refer to the question of notice, and the question as to whether complainant had notice or not of the vendee's

rights is therefore immaterial." *Lobsenz v. Koplow*, 108 *N. J. Eq.* 529, 530 (*Ch.* 1931).

The motion for summary judgment by defendant Alexander Hamilton Savings and Loan Association is therefore granted.

However, as to defendant Vreeland, an additional factor controls. Not only did he have actual notice of the original agreement to sell the property, but in fact he was a party thereto—as president of Birch Apartments, Inc.

In both *Reade v. Leslie* and *Bramall v. Walton* the contract of sale was properly recorded within the statutory three-month period—the fatal defect being the failure to file a *lis pendens (Reade)* and to commence an action for a specific performance *(Bramall)*.

In the case *sub judice* the recording took place more than 5½ months after the date set for conveyance, there was no *lis pendens* filed, nor was there any action commenced for specific performance of the agreement. In effect, the only connection between the facts before us and *R. S.* 46:21–3 is that an agreement for the sale of real property was recorded in the county clerk's office, some 2½ months late.

Had plaintiffs not made the vain attempt to comply with *R. S.* 46:21–3, defendant Vreeland would not be able to set up the statute as a defense, despite his knowledge of and participation in the original agreement to sell. Hence, if this court should consider plaintiffs' act of recording to be a nullity, then the statute would not even enter into the disposition of this case and defendant Vreeland would stand bathed in the light of his admitted knowledge of the sales agreement and the concomitant vulnerability to a vendee's lien to enforce the return of the down payment.

Furthermore, if the statute should apply, then a serious question arises as to whether defendant Vreeland in his dual role as corporate president of one of the original sellers and individual buyer at a later date is within the letter and spirit of the term "subsequent purchaser," as set forth in the

statute. In this respect it is to be noted that "failure to comply with the statute does not render a recorded contract void as to the parties thereto, but only as to *subsequent purchasers* and encumbrancers." (Emphasis added) *Reade, supra,* 137 *N. J. Eq.,* at *page* 350.

Can defendant Vreeland now come into court and claim that as a "subsequent purchaser," notwithstanding his actual notice of *and* participation in the original agreement to sell the premises, he is nonetheless shielded from any obligation to protect for the plaintiffs the $3,800 down-payment on the original purchase price, as well as the accompanying vendee's lien to enforce said obligation—his sole defense being that the plaintiff failed to comply with *R. S.* 46:21–3?

██ It is settled beyond question that a court of equity is the appropriate tribunal for the enforcement of an equitable (vendee's), as distinguished from a statutory or common law, lien. In fact a court of equity is the only proper tribunal for enforcing such a lien. *Reilly v. Griffith,* 141 *N. J. Eq.* 154, 164 (*Ch.* 1947). Since this court is sitting as a court of equity with respect to the applicability of the alleged vendee's lien, its decision must be based upon equitable principles.

> "This means, among other things, that the party asking the aid of the court must stand in conscientious relation to his adversary; his conduct in the matter must have been fair, just and equitable, not sharp or aiming at unfair advantage." *Stehr v. Sawyer,* 40 *N. J.* 352, 357 (1963).

██ Not only is there a serious question as to whether defendant Vreeland is by any stretch of the imagination a "subsequent purchaser" within the purview of *R. S.* 46:21–3, but furthermore, whether his entire course of conduct is such that this court, sitting as a court of equity, can grant the relief of summary judgment sought by him.

To grant defendant's motion and in effect to deny plaintiffs the right to impress a vendee's lien on the property to secure the return of their down-payment would not only be con-

trary to the equitable principles upon which the vendee's lien relief is based, but would also subvert the very purpose of *R. S.* 46:21–3, namely, to protect a "subsequent purchaser" from improperly recorded contracts for the sale of land and subsequent litigation concerning said contracts.

The motion for summary judgment by defendant Vreeland is therefore denied.